IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ANN BOGIE,

                              Plaintiff,                    OPINION AND ORDER

v.                                                          11-cv-324

JOAN ALEXANDRA MOLINSKY SANGER
ROSENBERG A/K/A JOAN RIVERS, IFC
FILMS, LLC, BREAK THRU FILMS, INC.,
RICKI STERN, ANNIE SUNDBERG, and,
SETH KEAL,

                              Defendants.

Plaintiff Ann Bogie filed this action seeking injunctive and compensatory relief for invasion of privacy under Wis. Stat § 995.50 against defendants Joan Alexandra Molinsky Sanger Rosenberg a/k/a Joan Rivers, IFC Films, LLC, Breakthru Films, Inc., Ricki Stern, Annie Sundberg, and Seth Keal.  On March 16, 2012, the court (1) dismissed the complaint against defendants Stern, Sundberg and Keal for lack of personal jurisdiction and (2) granted the remaining defendants' motion to dismiss, finding that the plaintiff had failed to state a claim under Wis. Stat. § 995.50.  (Dkt. #51.)  The Seventh Circuit subsequently affirmed this court's entry of final judgment, which dismissed the case with prejudice. *Bogie v. Rosenberg*, 705 F.3d 603 (7th Cir. 2013).

Presently before the court is defendants' motion for attorney's fees pursuant to Wis. Stat. § 995.50(6).  (Dkt. #53.)  Defendants contend that plaintiff's invasion of privacy claim based on defendants' filming and using her image in a documentary

without her consent was frivolous.  In response, plaintiff not only argues that her claim had merit, but makes her own motion for attorney's fees on the grounds that defendants' motion for attorney's fees is frivolous.  (Dkt. #56.)  For the reasons that follow, the court will grant defendants' motion, awarding reasonable attorney's fees and costs incurred in defending the claims under subsections (2)(a) and (2)(b), and deny plaintiff's motion.

## BACKGROUND

The alleged facts are laid out fully in the court's March 16, 2012, opinion.  (Dkt. #51.)  The court provides only a brief summary here.  Bogie alleged that defendants collaborated to produce and distribute a documentary entitled, *Joan Rivers: A Piece of Work*.  The documentary consists of various segments, one of which includes a performance by Rivers in February 2009 at the Lake of the Torches Casino located in Lac Du Flambeau, Oneida County, Wisconsin ("Segment 12").

During the performance, Rivers joked about deaf people.  A man in the audience shouted that he had a deaf son.  After the show, Bogie approached Rivers backstage for an autograph.  The events that transpired provide the basis for Bogie's complaint.  In a 16-second clip from Segment 12 of the documentary, Bogie and Rivers have the following exchange:

Bogie: Thank you.  You are so . . . I never laughed so hard in my life.

Rivers: Oh, you're a good laugher and that makes such a difference.

Bogie: Oh, I know.  And that rotten guy . . .

Rivers: Oh, I'm sorry for him.

Bogie: I was ready to get up and say . . . tell him to leave.

Rivers: He has a, he has a deaf son.

Bogie: I know.

Rivers: That's tough.

Bogie: But he's gotta realize that this is comedy.

Rivers: Comedy.

Bogie: Right.

(Nero Decl., Ex. A. (dkt. #10-1) 1:07:52-1:08:08.)

Bogie claimed that the use of this interaction in the documentary constituted an invasion of her privacy under Wis. Stat. § 995.50, specifically subsections (2)(a) and (2)(b), which define "invasion of privacy" as:

> (a) Intrusion upon the privacy of another of a nature highly offensive to a reasonable person, in a place that a reasonable person would consider private or in a manner which is actionable for trespass.

> (b) The use, for advertising purposes or for purposes of trade, of the name, portrait or picture of any living person, without having first obtained the written consent of the person or, if the person is a minor, of his parent or guardian.

The court found that Bogie failed to state a claim under subsection (a) because (1) a reasonable person would not consider the backstage of the Lake of the Torches Casino private, and (2) plaintiff failed to allege facts sufficient to demonstrate that any intrusion was "highly offensive." Additionally, the court found that defendants did not

3

misappropriate Bogie's image under subsection (b) because the use of her image in the documentary was incidental and not a substantial part of defendants' commercial purpose.  Since Bogie could not state a claim pursuant to Wis. Stat. § 995.50 under any set of facts, the court dismissed the action with prejudice.  The Seventh Circuit later affirmed the dismissal of the subsection (a) claim on the same basis, and affirmed dismissal of the subsection (b) claim on an alternative basis, finding that the use of Bogie's image fell within the newsworthiness and incidental use exceptions.  *Bogie*, 705 F.3d at 611, 616.


OPINION

## I.   Defendants' Motion for Attorney's Fees

A federal court sitting in diversity must look to the law of the forum state to evaluate a claim for attorney's fees.  *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975) (recognizing that in diversity cases, state statutes and case law apply to questions of attorney fees); *Champion Parts, Inc. v. Oppenheimer*, 878 F.2d 1003, 1006 (7th Cir. 1989) (applying state law to evaluate a claim for attorney's fees in a diversity case).  Wisconsin generally recognizes the American Rule, under which parties must bear the cost of their own attorney's fees.   *Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2007 WI 98, ¶ 16, 303 Wis. 2d 258, 735 N.W.2d 93.  However, the American Rule is a default rule that may be overcome by statute or contractual provisions providing for

attorney's fees. *Klemm v. Am. Transmission Co., LLC*, 2011 WI 37, ¶ 42, 333 Wis. 2d 580, 798 N.W.2d 223.

Wisconsin's Right of Privacy law contains one such fee-shifting provision, which states in pertinent part:

> If judgment is entered in favor of the defendant in an action for invasion of privacy, the court *shall* determine if the action was frivolous. If the court determines that the action was frivolous, it *shall* award the defendant reasonable fees and costs relating to the defense of the action.

Wis. Stat. § 995.50(6)(a) (emphasis added).  For an action for invasion of privacy to be frivolous, the court must find that it was either (1) "commenced in bad faith or for harassment purposes;" or (2) "devoid of arguable basis in law or equity."  Wis. Stat. § 995.50(6)(b).

Defendants argue that plaintiff's lawsuit falls under the second category -- that Bogie's claim was "devoid of arguable basis in law or equity" -- on two grounds.  (Mot. for Att'ys' Fees (dkt. #53) 1.)  First, defendants argue that plaintiff lacked any credible foundation for her claim because it had no support in precedent.  (*Id*. at 4.)  Second, defendants content that plaintiff admitted facts in her deposition that contravened a reasonable expectation of privacy by stating that the conversation with defendant Rivers took place amidst the presence of others.  (*Id*. at 3.)  Under these circumstances, defendants argue that plaintiff's initial filing, as well as continued pursuit of her claim, was frivolous.

In response, plaintiff argues that the legal procedure and standard for awarding attorney's fees in this case should be governed by Wis. Stat. § 802.05. Similar to Federal Rule of Civil Procedure 11, a party may not file a motion seeking sanctions for frivolous conduct under § 802.05 within twenty-one days of serving it upon the non-moving party in order to give the non-moving party an opportunity to withdraw or correct the allegedly frivolous pleading. Wis. Stat § 802.05(3)(a). Plaintiff argues that defendants' motion for attorney's fees should be denied because they did not comply with this twenty-one-day "safe harbor" provision, denying Bogie and her counsel an opportunity to withdraw the complaint. (Pl.'s Opp. (dkt #56) 4.) Plaintiff also contends that "this court has no basis to invoke [its] inherent power" to sanction her, because plaintiff did not act "in bad faith, vexatiously, wantonly, or for oppressive reasons." (*Id*. at 7.) Finally, plaintiff argues that, even if the court determines that it has the authority to sanction plaintiff and did not violate § 802.05, this court should not award defendants attorney's fees because plaintiff's claim has a reasonable basis in law and equity. (*Id*. at 9.)

## A.  Application of Wis. Stat. § 802.05

Plaintiff's primary response to defendants' motion is that it is not properly before the court under § 802.05. This argument appears to confound the issues of sanctions for pursuing frivolous litigation under § 802.05 with an award of statutory attorney's fees under § 995.50. As explained below, § 802.05 is certainly instructive in considering an award of fees under § 995.50, particularly in determining whether a claim or argument is

6

"devoid of arguable basis in law or equity."  Even so, a party seeking damages pursuant to § 995.50 need not follow the specific procedures or standard set forth in § 802.05.

In particular, plaintiff argues that she did not have proper notice under the "safe harbor" provision in § 802.05 indicating that defendants would seek attorney's fees, but this argument too fails.  The plain language of § 995.50(6)(a) indicates that a plaintiff bringing a claim for invasion of privacy exposes herself to the possibility of incurring attorney's fees if her claim is frivolous.  *See Pachowitz v. Ledoux*, 2003 WI App 120, ¶ 51, 265 Wis. 2d 631, 666 N.W.2d 88 (holding that § 995.50 put the defendant on notice that the plaintiff was seeking attorney's fees in a settlement offer).   Furthermore, plaintiff's brief in opposition to defendants' motion for attorney's fees provided Bogie with a reasonable opportunity to respond and rebut the claims of frivolousness made by defendants.

Plaintiff also cites *Corley v. Rosewood Care Center, Inc.*, 142 F.3d 1041, 1045 (7th Cir. 1998), arguing that this court cannot invoke its inherent authority to sanction plaintiff.  *Corley*, however, is readily distinguishable.  There, the district court sanctioned a party for pursuing a motion made during the course of litigation without articulating clear reasons for the sanction and invoking neither Rule 11 nor its inherent authority for doing so.  *Id*. at 1058.  In vacating this sanction, the Seventh Circuit advised that:  "if the [district] court was relying on its inherent power to sanction a bad-faith filing, it should have specifically so stated, along with delineating its reasons for finding bad faith" [and] "should have explained why Rule 11 was inadequate to serve the court's purposes."  *Id*. at

1058-59.  In the instant motion, however, defendants are not asking this court to award attorney's fees pursuant to Rule 11, Wis. Stat. § 802.05, or this court's inherent authority.  Rather, defendants are seeking fees pursuant to the fee-shifting statutory provision in § 995.50.

### B.  Frivolous Claims: § 995.50(6)

#### 1.  Standard

Sections 802.05 and 995.50(6) are substantially the same with two key differences:  first, § 802.05 requires advanced notice; and second, upon finding an action frivolous, attorney's fees are discretionary under § 802.05 and mandatory under § 995.50(6). Since Wisconsin case law provides limited guidance on what constitutes a "frivolous" claim under § 995.50(6), courts have unsurprisingly looked to case law interpreting the standard for frivolous under § 802.05.  *See Poston v. Burns*, No. 2011AP1966, slip op. (Wis. Ct. App. July 31, 2012) (citing cases determining claims under § 814.025 to adjudicate a claim under § 995.50(6)(b)(1); *cf. Hannigan v. Liberty Mut. Life Ins. Co.*, 230 Wis. 2d 746 (Ct. App. 1999) (unpublished) (applying same standard to evaluate claims of frivolousness pursuant to § 895.50 and § 814.025 with respect to two other fee-shifting statutes).

The issue of whether an action is frivolous involves a mixed question of law and fact.  *Jandrt v. Jerome Foods, Inc.*, 227 Wis. 2d 531, 562, 597 N.W.2d 744, 760 (1999). The issue is not, as plaintiff suggests, whether a party or attorney knew or should have

8

known what decision the court would render.  (Pl.'s Opp. (dkt #56) 9.)  At the time of bringing suit, parties and their counsel are not expected, as plaintiff puts it, to have "supernatural ability to know what the Court believes reasonable juries would find in cases such as this." (*Id.* at 10.)  There is no requirement of clairvoyance, prescience, or even exceptional astuteness.  The standard is simply whether a party or attorney "knew or should have known the position taken was frivolous as determined by what a reasonable attorney [or party] would have known or should have known under the same or similar circumstances." *Sommer v. Carr*, 99 Wis. 2d 789, 799, 299 N.W.2d 856, 869 (1981) (noting that this "same objective test can be applied to a 'party'").  This is intended to be an objective standard.  *Id.* at 797; *Jandrt*, 227 Wis. 2d at 549.  The court must determine whether the facts known at the time of the pleading would lead a reasonable attorney or litigant to conclude that the claim lacked a basis in law.  *Jandrt*, 227 Wis. 2d at 563.

Similarly, plaintiff is correct in pointing out that a claim is not frivolous merely because the party did not prevail in court.  "A claim is not frivolous merely because there was a failure of proof or because a claim was later shown to be incorrect." *Id.* at 551. "However, a claim cannot be made reasonably or in good faith, even though possible in law, if there is no set of facts which could satisfy the elements of the claim, or if the party or attorney knows or should know that the needed facts do not exist or cannot be developed." *Stern v. Thompson & Coates, Ltd.*, 185 Wis. 2d 220, 244, 517 N.W.2d 658, 667 (1994).  An initially non-frivolous claim may also become frivolous if "the factual

9

basis supporting the complaint is shown to be groundless during discovery." *Munson v. Milwaukee Bd. of Sch. Dir.*, 969 F.2d 266, 271 (7th Cir. 1992).   The court also must examine each claim independently to determine whether it has a basis in law and fact. *See Jandrt*, 227 Wis. 2d at 552 ("[T]he inclusion of one sufficient and adequately investigated claim does not permit counsel to file unsubstantiated claims as riders.").

Finally, as plaintiff also correctly points out, the court resolves all doubts in favor of finding the claim non-frivolous.  (Pl.'s Opp'n (dkt. #56) 9 (citing *Stern*, 185 Wis. 2d at 235).)

### 2.   Subsection (2)(a): Intrusion

To establish a basis in law for a claim under subsection (2)(a), a plaintiff must show that the defendant unreasonably invaded her privacy in a manner considered by a reasonable person to be highly offensive and in a place considered by a reasonable person to be private.  Wis. Stat. § 995.50(2)(a).  "[A]n attorney has an obligation to represent his or her client's interests zealously, [which] may include making some claims which are not entirely clear in the law or on the facts, at least when commenced." *Stern*, 185 Wis. 2d at 235.  At the outset of a case, an attorney may rely upon information provided by his client to develop the factual basis of the claim. *Jandrt*, 227 Wis. 2d at 757.  However, "the attorney should question his client closely and not accept the client's version on faith alone." *Id*.

10

The court must identify the facts known to plaintiff at the time commencement of the action. *Jandrt*, 227 Wis. 2d at 550. At that time, she and Attorney Seidl knew or should have known the following facts:

1) Defendants collaborated to produce and distribute a documentary entitled *Joan Rivers: A Piece of Work*.

2) This documentary included a performance by defendant Rivers at the Lake of the Torches Casino in Lac Du Flambeau, Wisconsin.

3) Bogie attended the performance.

4) After the performance, Bogie and Rivers interacted backstage.[1]

5) Defendants included the interaction between Bogie and Rivers in the documentary.

At the time plaintiff filed her amended complaint, the court finds that she and Attorney Seidl knew or should have known the following, additional facts:

1) In the documentary, a man appears standing behind Bogie and Rivers during their interaction.

2) In the documentary, a microphone appears in the picture near Bogie during the interaction between Bogie and Rivers.

3) In the documentary, one can hear chatter in the background during the interaction between Bogie and Rivers.

The initial complaint filed by plaintiff on May 06, 2011, only alleged violations under subsection (2)(b), while the amended complaint filed on July 7, 2011, alleged an additional violation under subsection (a). Before filing the original complaint, there is nothing in the record demonstrating whether Attorney Seidl personally viewed the

---

[1] A more complete description of the encounter between Bogie and Rivers is laid out in the background section of this opinion and in the court's opinion on the motion to dismiss.

11

documentary or simply relied on Bogie's version of Segment 12. Given that defendants included a copy of the documentary as an exhibit to their motion to dismiss the original complaint, Attorney Seidl certainly should have reviewed the documentary himself at that time.

As noted in the court's merits opinion, which dismissed the action, viewing the documentary would have revealed, at a minimum, one man standing directly behind Bogie and Rivers and presumably at least one other holding the camera and/or microphone. From the din of chatter in the background, Bogie appears to have been in the presence of still others. After viewing the documentary for himself, as any reasonable attorney would or should have done in the same or similar circumstances, Attorney Seidl would or should have realized that the backstage area was not private, at least as viewed objectively, by a reasonable person. Thus, Seidl knew or should have known plaintiff could not prove an essential element of her claim under subsection (2)(a). Moreover, plaintiff Bogie -- either based on her own experience during the filming or in watching the documentary herself -- knew or should have known that the backstage area was not private even at the commencement of the litigation.

All this makes nearly inexplicable that plaintiff and her counsel proceeded to file an amended complaint almost two months *after* defendants submitted its documentary to the court and to them. Plaintiff even incorporates the DVD of the documentary in her amended complaint (Am. Compl. (dkt. #24) ¶ 14), as well as added the alleged violation of subsection (2)(a). Even resolving all doubts in favor of plaintiff, the court still finds

12

that the plaintiff's action under subsection (2)(a) became frivolous when defendants made the documentary itself part of this record.  At that point, Attorney Seidl and Bogie knew or should have known that the facts alleged could not satisfy the elements of a § 995.50(2)(a) claim.

### 3.   Subsection (2)(b): Appropriation

Plaintiff's second claim alleged that defendants violated her privacy pursuant to § 995.50(2)(b) by filming and using her name and image without her consent.  (Am. Compl. (dkt. #24) ¶ 23.)  To establish a reasonable basis in law and equity for an action pursuant to subsection (2)(b), a plaintiff must allege that the defendant (1) used the plaintiff's name, portrait or picture, (2) for purposes of trade, (3) without first having obtained her written consent.  Wis. Stat. § 995.50(2)(b).  The facts establish that defendants used plaintiff's image in the documentary without first obtaining her consent. The parties dispute centered on whether defendants used plaintiff's likeness for purposes of trade.

Based on the plain language of the statute at least, plaintiff made a plausible, good-faith argument that she has commercial value in her likeness even though she is not a celebrity.  (*See* Op. & Order (dkt. #51) 18 n.7.)  Where plaintiff's second claim becomes frivolous is her further argument that since she has value in her image, her appearance in Segment 12 was an integral part of the documentary and had a substantial connection to defendants' commercial purpose.  These bare allegations, however, had no basis in reality to support them.  Plaintiff knew or should have known that a defendant

13

invades a plaintiff's privacy under subsection (2)(b) "only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness" of the plaintiff.   Restatement (Second) of Torts, § 652C, cmt. d; *see Hirsch v. S.C. Johnson & Son, Inc.*, 90 Wis. 2d 379, N.W.2d 129 (1979).   Without facts to support the claim that plaintiff's appearance substantially contributed to defendants' commercial gain, plaintiff's subsection (2)(b) claim against defendants was also devoid of arguable basis in fact, and, therefore, frivolous under § 995.50(2)(b).

## II.   Award of Attorney's Fees

Under Wisconsin's Right of Privacy law, the court "*shall* award the defendant attorney's fees and costs relating to the defense of [a frivolous] action."   Wis. Stat. § 995.50 (emphasis added).   Having found plaintiff's claims to be frivolous, the court will award reasonable attorney's fees to defendants for the necessary and reasonable amount of time they spent, and the costs incurred, in defending plaintiff's claims under subsection (2)(a) and (2)(b).

Defendants ask for an award in the amount of $70,579.05, which represents the amount already paid by defendants on their total fees of $222,720.75.[2]   (Mot. for Att'ys' Fees (dkt. #53) 6.)   Attorney Jones seeks fees for 563.85 hours of work spent over a

---

[2] Attorney Jones's invoice does not layout the fees in much detail; however, "the amount of itemization and detail required is a question for the market.   If counsel submit bills with the level of detail that paying clients find satisfactory, a federal court should not require more."   *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001).

14

twelve-month period on behalf of six defendants at an hourly rate of $395.00. (Decl. of David E. Jones ("Jones Decl.") (dkt. #54) 2.)

In general, courts may calculate reasonable attorney's fees using the "lodestar" method by "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Simpson v. Sheahan*, 104 F.3d 998, 1001 (7th Cir. 1997). And "the best guarantee of reasonableness is willingness to pay." *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996). Once the attorney seeking fees provides evidence of their reasonableness, "the burden shifts to the opposing party to show why a lower rate should be awarded." *Stark v. PPM Am., Inc.*, 354 F.3d 666, 675 (7th Cir. 2004).

In this case, Attorney Jones submitted a declaration regarding his fees, which indicates that defendants have paid $70,579.05 for their counsel's work to date. (Jones Decl. (dkt. #54) 1.) Moreover, since plaintiff does not dispute the reasonableness of these fees, the court finds Attorney Jones's hourly rate of $395.00 and time spent on the case reasonable. Therefore, this court will grant defendants' motion for fees in the amount of $70,579.05.

Wis. Stat. § 995.50(6) does not expressly state whether the party or the attorney must pay the awarded fees. There is a general presumption, however, that, "when a fee-shifting statute is silent about who pays attorney's fees, parties -- not attorneys -- are accountable." *In re Crescent City Estates, LLC*, 588 F.3d 822, 828 (4th Cir. 2009). Accordingly, the court will enter the award of fees against Bogie personally.

15

### III.    Plaintiff's Motion for Attorney's Fees

Finally, in her opposition brief to defendants' motion, Bogie incorporates her own motion for attorney's fees against the defendants pursuant to Fed. R. Civ. P. 11 and Wis. Stat. § 802.05(3)(a)1.  In an action under either section, the court in its discretion may allow reasonable attorney's fees and costs of action to either party.   Fed. R. Civ. P. 11(c)(2); Wis. Stat § 802.05(3)(a)1.  Plaintiff argues that defendants' motion warrants sanctions for four reasons: (1) defendants did not comply with the notice requirement of § 802.05(3)(a)1; (2) defendants knew or should have known that plaintiff could not have predicted this court's decision beforehand, and, therefore, their claim of frivolousness is itself frivolous; (3) defendants based their claims in part on plaintiff's discovery answers; and (4) defendants knew or should have known plaintiff cannot incur monetary sanctions because an attorney represents her.  This court rejects each of these arguments.

First, as explained above, defendants did not make their motion pursuant to either Fed. R. Civ. P. 11 or § 802.05, nor seek sanctions against plaintiff.  Rather, defendants moved for attorney's fees in accordance with a fee-shifting provision in Wisconsin's Right of Privacy statute.  Wis. Stat. § 995.50(6).  Second, the court has already found that plaintiff's claims *were* frivolous.  Third, while plaintiff's discovery responses confirm that she was aware that others were present when she spoke to defendant Rivers backstage, this was otherwise obvious or should have been so to plaintiff at the time she brought suit and the court did not rely on her discovery responses in finding the claim frivolous. Fourth, plaintiff is correct that she cannot incur attorney's fees pursuant to §

16

802.05(3)(b)(2); however, that section only applies if a party's claims "are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Wis. Stat. § 802.05(2)(b). As previously explained, plaintiff's claims do not satisfy these criteria. For all of these reasons, the court will deny plaintiff's motion for attorney's fees.[3]

ORDER

IT IS ORDERED that:

1)  defendants' motion for attorney's fees pursuant to Wis. Stat. § 995.50(6) (dkt. #53) is GRANTED.  The court awards attorney's fees in the amount of $70,579.05 to defendants; and

2)  plaintiff's motion for attorney's fees pursuant to Fed. R. Civ. P. 11 and Wis. Stat. § 802.05(3)(a)1 is DENIED.

Entered this 26th day of September, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

[3] In a (hopefully) final irony, plaintiffs' motion is also improper because she failed to follow the very safe harbor provisions in both Fed. R. Civ. P. 11 and § 802.05 invoked unsuccessfully against defendant's motion for attorney fees.

17